UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Emily King, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 1:23-cv- 927 |
| | ) |
| Transworld Systems, Inc., | ) |
| | ) |
| Defendant. | ) |
| | ) |

# COMPLAINT SEEKING DAMAGES FOR VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT AND THE FAIR CREDIT REPORTING ACT

## Introduction

1. This is an action for actual and statutory damages, legal fees and costs pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. (hereinafter referred to as the "FCRA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et. seq* (hereinafter referred to as the "FDCPA"), which prohibits debt collectors from engaging in abusive, deceptive, and unfair practices. Id.

2. Because of Congress' concern with a consumer's privacy, consumer reports can only be disseminated for certain designated purposes. The FCRA enumerates specific purposes authorizing the release of a consumer report. The only permissible purposes are listed in the statute; consumer reports can be released only for those purposes and no other. *See* 15 U.S.C. §1681b(a). *See also* Cole v. U.S. Capital, 389 F.3d 719 (7th Cir. 2004).

3. The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses. Id. If a violation occurs, "the FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional." Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1030 (9th Cir. 2010). Even a single violation of the FDCPA is sufficient to support liability. Taylor vs. Perrin, Landry, deLaunay, & Durand, 103 F.3d 1232, 1238 (5th Cir. 1997).

1

## Jurisdiction

4. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d). Additionally, jurisdiction of this Court arises pursuant to 15 U.S.C. § 1681 *et seq.* and 28 U.S.C. § 1337.

## Venue

5. Venue is proper in this Judicial District.

6. The acts and transactions alleged herein occurred in this Judicial District.

7. The Plaintiff resides in this Judicial District.

8. The Defendant transacts business in this Judicial District.

## Parties

9. The Plaintiff, Emily King, is a natural person.

10. The Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a and by 15 U.S.C. § 1681a(c).

11. The Plaintiff is "any person" as that term is used in 15 U.S.C. § 1692d preface.

12. The Defendant, Transworld Systems, Inc., (hereinafter referred to as "Defendant"), is a debt collector operating from an address at 500 Virginia Dr., Suite 514, Ft. Washington, PA 19034. Defendant is a "person" as that term is defined by 15 U.S.C. § 1681a(b). *See Exhibit "1" attached hereto.*

13. The Defendant is a debt collector conducting business in the State of Indiana.

14. Defendant regularly attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15. Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

## Factual Allegations

16. Defendant is a debt collection agency attempting to collect an alleged debt from Plaintiff.

17. The Plaintiff incurred an alleged debt to that was for primarily for personal, family or household purposes as defined by §1692(a)(5). Specifically, Plaintiff incurred an alleged student loan debt.

18. The Plaintiff disputes the alleged debt.

19. The Defendants' collector(s) were employee(s) and/or representative(s) of the Defendant at all times mentioned herein.

20. The Defendants acted at all times mentioned herein through their employee(s) and/or representative(s).

21. On April 2, 2019, the underlying alleged creditor in this action, National Collegiate Student Loan Trust 2007-1, filed a debt collection lawsuit entitled <u>National Collegiate Student Loan Trust 2007-4 v. Emily King</u> in the Marion Superior Court under cause number 49D05-1904-CC-13197 in an attempt to collect an alleged student loan debt from Ms. King. *See Exhibit "2" attached hereto.*

22. Prior to April 2, 2019, Defendant was the servicing agent for the alleged student loan that Ms. King incurred. Upon information and belief, Defendant remains the servicing agent for this alleged student loan.

23. On April 7, 2021, the Judge in the aforementioned debt collection lawsuit ruled in favor of Ms. King and against National Collegiate Student Loan Trust 2007-1. Thus, Ms. King no longer owed the alleged debt to National Collegiate Student Loan Trust 2007-1. *See Exhibit "3" attached hereto*.

24. Regardless, several years later, National Collegiate Student Loan Trust 2007-1 hired the Defendant to collect the alleged debt that was the subject of the debt collection lawsuit that it lost on April 7, 2021, when the Marion County Superior Court ruled against National Collegiate Student Loan Trust 2007-1.

25. In short, the alleged debt at issue in this matter is not a valid debt.

26. Because the alleged debt at issue in this matter is not a valid debt and the Defendant has represented that it is a valid debt, Defendant has violated the FDCPA pursuant to the Seventh Circuit Court of Appeals. *See* <u>Turner v. J.V.D.B. & Associates, Inc</u>., 330 F.3d 991 (7th Cir. 2003)(Even an unintentional false representation of the legal status of a debt violates §1692e(2)(A)).

27. The alleged debt at issue in this matter is not a valid debt because, as a matter of public record, the Marion Superior Court ruled in favor of Ms. King and against National Collegiate Student Loan Trust 2007-1. *See Exhibit "3" attached hereto*.

28. On or about November 8, 2022, in an attempt to collect the alleged debt at issue in this matter, Defendant accessed Plaintiff's individual and personal credit file from TransUnion, a "consumer reporting agency" as that term is defined by 15 U.S.C. §1681a(f). *See Exhibit "4" attached hereto.*

29. On or about November 8, 2022, Defendant sent Dunning letter to Plaintiff attempting to collect the aforementioned alleged debt. *See Exhibit "5" attached hereto.*

30. At some point prior to January 31, 2023, Defendant placed the alleged debt on Plaintiff's Experian credit report. Plaintiff's Experian credit report shows that Plaintiff allegedly owes $14,504 as of January 2023.

31. On February 3, 2023, Defendant sent another dunning letter to Plaintiff attempting to collect the aforementioned alleged debt. *See Exhibit "6" attached hereto*.

32. On February 17, 2023, Defendant called Plaintiff in an attempt to collect the alleged debt at issue in this matter. During this telephone conversation, Plaintiff disputed the alleged debt.

33. On February 23, 2023, Defendant sent "verification" of the alleged debt to Plaintiff. This verification consisted of a chart showing the accumulation of interest on the alleged debt. Thus, Defendant represented that interest would apply to this alleged debt. *See Exhibit "7" attached hereto.*

34. However, the amount of the alleged debt has not changed. Indeed, in November of 2022 the alleged amount due was $14,504 and on February 3, 2023, the alleged amount due was $14,504. Accordingly, Defendant misrepresented the character of the alleged debt by asserting that interest would apply (even though it's not a valid debt).

35. Misrepresenting the character of the alleged debt constitutes a violation of the FDCPA.

36. Defendant's violations of the FDCPA were material because, although Plaintiff reasonably believed that she had the protection against being contacted by telephone by debt collectors, Defendant's continued collection communications would make the unsophisticated consumer believe that she did not have the rights Congress had granted her under the FDCPA.

37. Plaintiff's injuries constitute an injury-in-fact. Defendant's violations are material and Defendant's actions caused Plaintiff to take time out of her day to contact her former attorney about the status of the alleged debt. She was forced to retain legal counsel for this action. Defendant's actions constitute an invasion of the Plaintiff's privacy and constitute an intrusion upon her seclusion.

38. The Defendant's collection communications are to be interpreted under the "unsophisticated consumer" standard. *See* Gammon vs. GC Services, Ltd. Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994).

39. At no time since April 7, 2021, has Plaintiff had any other student loans with Collegiate Student Loan Trust 2007-1. Further, Plaintiff has not had any other type of business relationship with Collegiate Student Loan Trust 2007-1.

40. TransUnion, LLC, (hereinafter "TransUnion") is a consumer reporting agency as that term is defined by 15 U.S.C. §1681a(f). TransUnion is a data repository that assembles and stores information on consumers for the purpose of furnishing consumer reports to third parties.

41. Consumer reports contain personal, private, and highly confidential information including: (i) different variations of an individual's full name, including middle name and/or middle initial(s); (ii) current address at which an individual resides; (iii) previous address(es) at which an individual has resided; (iv) social security number; (v) date of birth; (vi) current telephone number; (vii) previous known telephone number(s); (viii) current employer; (ix) former employer(s); (x) public records; (xi) account histories with all reporting creditors, including, but not limited to, home loans, car loans, credit cards, charge cards, and store cards; and, (xii) records of requests for a consumer report by third parties (hereinafter collectively, "Confidential Information").

42. Given the overwhelming scope of the information available when on procures a consumer report about another, in 1970 Congress enacted the FCRA to protect consumer privacy by requiring consumer reporting agencies to, inter alia, limit the furnishing of consume reports to statutorily enumerated purposes only. *See* TRW v. Andrews, 534 U.S. 19, 23 (2001).

43. The statute of was created in response to "concerns about corporations' increasingly sophisticated use of consumers' personal information in making credit and other decisions." Syed v. M-1, LLC, et al., 846 F.3d 1034, 1037 (9th Cir. 2017) (*citing* the FCRA, Pub.L. 91-508, Section 602, 84 Stat. 1114, 1128). *See also* United States v. Bormes, 568 U.S. 6, 7 (2012)(The Fair Credit Reporting Act has as one of its purposes to "protect consumer privacy" (quotation and citation omitted)); Cole v. U.S. Capital, 389 F.3d 719, 723 (7th Cir. 2004)("In {§1681} Congress made it clear that the FCRA is designed to preserve the consumer's privacy in the information maintained by consumer reporting agencies").

44. When it enacted the FCRA, Congress found, among other things, that "[t]here is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy. *See* 15 U.S.C. §1681(a)(4).

45. Tasked protecting a consumer's privacy, the FCRA governs who can access consumer report information from credit reporting agencies and for what purpose. To that end, the FCRA enumerates certain "permissible purposes" for accessing credit reports.

46. Defendant is a subscriber and user of consumer reports issued by TransUnion.

47. Defendant is also a furnisher of data to TransUnion about its experiences with its customers and potential customers.

48. Defendant has a symbiotic relationship with TransUnion such that it furnishes information to TransUnion regarding its transactions and/or other experiences with customers while also purchasing from TransUnion information about its customers and other consumers.

49. On or about November 8, 2022, despite being cognizant of the facts as delineated above, Defendant procured from TransUnion a copy of Plaintiff's consumer report at which time Defendant made a general or specific certification to TransUnion that Defendant sought the consumer report in connection with a business transaction initiated by Plaintiff, to review an account to determine whether Plaintiff continued to meet the terms of said account, or for some other permissible purposes enumerated by the FCRA.

50. The certification made by Defendant to TransUnion was false.

51. Despite certifying to TransUnion that it had a permissible purpose for procuring Plaintiff's consumer report, Defendant had not such permissible purpose.

52. At no time on or prior to November 8, 2022, did Plaintiff consent to Defendant obtaining her consumer report.

53. On or about November 8, 2022, despite being cognizant of the facts as delineated above, Defendant impermissibly procured from TransUnion Plaintiff's individual and personal credit report.

54. On or about November 8, 2022, at the time Defendant impermissibly procured from TransUnion Plaintiff's individual and personal credit report, Plaintiff's Confidential Information was published to Defendant.

55. On or about November 8, 2022, at the time Defendant impermissibly procured from TransUnion Plaintiff's individual and personal credit report, Defendant reviewed Plaintiff's Confidential Information.

56. On or about November 8, 2022, at the time Defendant impermissibly procured from TransUnion Plaintiff's individual and personal credit report, unknown employees, representatives, and/or agents of Defendant viewed Plaintiff's Confidential Information.

57. On or about November 8, 2022, at the time Defendant impermissibly procured from TransUnion Plaintiff's individual and personal credit report, Defendant obtained information relative to Plaintiff's credit history and credit worthiness.

58. Plaintiff has a right to have her Confidential Information kept private.

59. No individual/entity is permitted to obtain and review Plaintiff's personal and confidential information unless either Plaintiff provides his consent for the release of the information or the individual/entity has a permissible purpose to obtain the confidential information as enumerated by the FCRA.

60. Defendant procured from TransUnion Plaintiff's consumer report without his knowledge and consent.

61. Defendant procured from TransUnion Plaintiff's consumer report without a permissible purpose.

62. By its actions, when Defendant impermissibly procured from TransUnion Plaintiff's individual and personal credit report, Defendant invaded Plaintiff's privacy.

63. By its actions, when Defendant impermissibly procured from TransUnion Plaintiff's individual and personal credit report, Defendant effectively intruded upon the seclusion of Plaintiff's private affairs.

64. When Plaintiff discovered that Defendant had procured her personal, private and confidential information from TransUnion, Plaintiff was extremely angry, frustrated and suffered emotional distress resulting from Defendant's invasion of his privacy.

65. When Plaintiff discovered that Defendant had procured her personal, private and confidential information from TransUnion, Plaintiff was extremely worried, concerned and frustrated that Defendant's impermissible access of her personal, private and confidential information from one or more consumer reporting agency could continue indefinitely.

66. When Plaintiff discovered that Defendant had procured her Confidential Information from TransUnion, Plaintiff was concerned about the continued security and privacy of her Confidential Information. *See* Persinger v. Southwest Credit Systems, LP, 20 F.4th 1184 (7th Cir. 2021)(Seventh Circuit Court of Appeals ruled that accessing a consumer's credit report represents an invasion of privacy which constitutes standing under Article III).

67. When Plaintiff won the lawsuit against National Collegiate Student Loan Trust 2007-1, Plaintiff rightfully believed that his business relationship with National Collegiate Student Loan Trust 2007-1 had come to an end. When Plaintiff discovered that Defendant had procured her Confidential Information for National Collegiate Student Loan Trust 2007-1, Plaintiff believed that National Collegiate Student Loan Trust 2007-1 and its agents would continue to act with impunity and continue to procure her Confidential Information indefinitely.

68. Defendant's conduct, as delineated above, constitutes a violation of 15 U.S.C. §1681b(f)(1). *See also* Buckley v. AFNI, 133 F.Supp.2d 1140 (S.D. Ind. 2016)(Accessing a consumer's credit report to collect an invalid debt constitutes a violation of the FCRA).

69. As a direct and proximate result of Defendant's conduct as delineated above, Plaintiff has suffered actual damages in the form of financial and dignitary harm arising from the Defendant's review of her personal information and her credit information and an injury to her credit rating and reputation. Furthermore, Plaintiff will continue to suffer the same harm for an indefinite time in the future all to Plaintiff's great detriment and loss.

70. Plaintiff hereby demands a trial by jury on all issues so triable.

### First Claim for Relief:
### Violation of the FDCPA

71. The allegations of paragraphs 1 through 70 of the complaint are realleged and incorporated herewith by reference.

72. The Defendant's acts and omissions constitute a violation of 15 U.S.C. §1692c.

73. The Defendant's acts and omissions constitute a violation of 15 U.S.C. § 1692d.

74. The Defendant's acts and omissions constitute a violation of 15 U.S.C. § 1692e.

75. The Defendant's acts and omissions constitute a violation of 15 U.S.C. § 1692f.

76. The Defendant's acts and omissions constitute a violation of 15 U.S.C. § 1692g.

77. As a result of the above violations of the FDCPA, Defendant is liable to Plaintiff for actual damages, statutory damages of $1,000 per defendant, attorney fees, and costs.

## Second Claim for Relief:
## Violation of the FCRA

78. The allegations of paragraphs 1 through 70 of the complaint are realleged and incorporated herewith by reference.

79. The Defendant's acts and omissions constitute a violation of 15 U.S.C. § 1681b.

80. The conduct of Defendant was a direct and proximate cause, and a substantial factor, in bringing about the serious financial injuries, actual damages and harm to the Plaintiff. Defendant is liable to Plaintiff for statutory, actual, and punitive damages, along with attorneys' fees and the costs of litigation, and such further relief, as permitted by law.

## Prayer for Relief

WHEREFORE, the Plaintiff prays that the Court grant the following:

1. A finding that the Defendant violated the FDCPA and/or the FCRA.

2. Actual damages under 15 U.S.C. § 1681o and 15 U.S.C. § 1692k(a)(1).

3. Statutory damages under 15 U.S.C. § 1681n(a) and 15 U.S.C. § 1692k(a)(2)(A).

4. Punitive damages under 15 U.S.C. § 1681n(a)(2).

5. Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1692k(a)(3).

6. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ John T. Steinkamp
John T. Steinkamp
John Steinkamp and Associates
Attorney for Plaintiff
5214 S. East Street, Suite D1
Indianapolis, IN 46227
Office: (317) 780-8300
Fax: (317) 217-1320
Email: john@johnsteinkampandassociates.com